IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KF FRANCHISING, LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:17-cv-3849 |
| | § | |
| TASONE INC., STEVE BOLES, and | § | |
| RAZIJE ELEZ, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S VERIFIED COMPLAINT

Plaintiff KF Franchising, Ltd. ("KFF" or "Plaintiff") files this Verified Complaint against TASONE inc. ("Tasone"), Steve Boles ("Boles") and Razije Elez ("Elez") (collectively, "Defendants") based on Defendants' violations of the Lanham Act, violations of a covenant against competition, breach of a franchise agreement, breach of a guaranty, and attorneys' fees.

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff KF Franchising, Ltd. is a Texas limited partnership with its principal place of business located at 23240 Westheimer Parkway, Suite A, Katy, Texas 77494.  KFF's sole general partner is Kolache Factory Management, L.L.C., a Texas limited liability company. The only member of Kolache Factory Management, L.L.C. is John Banks, who resides in Houston, Texas, and is a citizen of the State of Texas.  KFF is, therefore, a citizen of the State of Texas.

2.      Defendant TASONE inc. is a Colorado corporation with its principal place of business located at 6633 Welch Street, Arvada, Colorado 80004.  TASONE is, therefore, a citizen of the State of Colorado.  TASONE inc. is formerly known as Tasone LLC.  Tasone may

be served through its agent for service of process Razije Elez at 6633 Welch Street, Arvada, Colorado 80004.

3.      Defendant Steve Boles is an individual who, upon information and belief, is a resident of Jefferson County, Colorado, and a citizen of the State of Colorado.  Defendant Steve Boles may be served with process at 6633 Welch Street, Arvada, Colorado 80004.

4.      Defendant Razije Elez is an individual who, upon information and belief, is a resident of Jefferson County, Colorado, and a citizen of the State of Colorado.  Defendant Razije Elez may be served with process at 6633 Welch Street, Arvada, Colorado 80004.

5.      This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1332 and 1338, 15 U.S.C. § 1121, and, with respect to certain claims, 28 U.S.C. § 1367.  Defendants also agreed to submit to the jurisdiction of any federal District Court sitting in Harris County, Texas in the Franchise Agreement and the Guaranty (both terms defined below).

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this jurisdiction.  Defendants further agreed to venue in a federal District Court sitting in Harris County, Texas in the Franchise Agreement and the Guaranty.

## ALLEGATIONS COMMON TO ALL COUNTS

### *KF Franchising, Ltd.'s Business*

7.      KFF is a limited partnership that was formed on November 29, 2000.  Kolache Factory, Inc. is an affiliated company that developed the Kolache Factory business system in 1981 and opened the first Kolache Factory bakery in March 1982.

8.      Kolache Factory, Inc. currently operates 26 Stores of its own.  It began offering franchises in 1997 and had sold franchises for five Stores by the time KFF was organized.

Kolache Factory, Inc.'s principal office address is the same as KFF, and KFF has no other parents, predecessors or other affiliates.

9.      KFF's only business is the sale and servicing of Kolache Factory franchises. Kolache Factory bakery cafes ("Stores") are distinctive retail outlets that operate under the Kolache Factory trade name.  They sell KFF's proprietary brand of kolaches, which they make fresh daily from KFF's propriety dough and from various fillings, including meat, cheese and fruit.  Stores may also serve coffee, soft drinks, chips and other snack foods.  A Kolache Factory franchise entitles a franchisee to operate one Store at an approved location.  The Franchisee must operate the Store under the business system and operating procedures KFF developed, as described in the Operations Manual.[1]  Franchisees must use the propriety brand of kolache dough in all of the franchisee's kolaches, and franchisees must follow the propriety recipes in making the kolaches.  Franchisees may only sell the menu items that KFF specifies or approves.

10.     Stores are designed to be located in shopping centers, malls and free standing buildings.  They typically occupy from 1,800 to 2,000 or more square feet of leased retail space. Smaller footprint stores generally provide limited customer seating and are designed for customers who purchase KFF's products for off-premises consumption.  KFF also encourages its franchisees to offer catering services for parties, school functions, fairs and similar events. Currently, Stores are located in at least six different states.

11.     Kolaches appeal primarily to adult consumers, ages 25 to 49.  Many of KFF's customers consider kolaches breakfast food, and approximately 80% of a typical Store's sales occur between the hours of 6:00 and 10:00 in the morning.  Stores compete with quick service restaurants and convenience stores that sell carry-out breakfast sandwiches and pastries and, to a

---

[1] Capitalized words not otherwise defined herein shall have the meanings ascribed to them in the Glossary of Terms attached to the end of the Franchise Agreement.  *See* Franchise Agreement, Exhibit "A," pp. Glossary 1-3.

lesser degree, with donut shops. A Store's sales do not experience significant seasonal fluctuations.

### *The Franchise Agreement and Guaranty*

12.     In January 2015, KFF entered into a Franchise Agreement with Tasone LLC. A true and correct copy of the Franchise Agreement is attached hereto as <u>Exhibit "A."</u> The term of the Franchise Agreement is ten years, unless sooner terminated. *See* Franchise Agreement, Exhibit "A," § 11.

13.     Boles and Elez also executed a Guaranty and Acknowledgment ("Guaranty") in which they jointly and severally, absolutely and unconditionally guaranteed to KFF: (i) the faithful and punctual performance of each and every duty and obligation of Tasone under the Franchise Agreement; and (ii) the payment in full of certain monetary obligations when they came due. A true and correct copy of the Guaranty is attached hereto as <u>Exhibit "B."</u>

14.     On August 17, 2015, KFF and Tasone LLC executed a Change of Name/Entity Form Amendment to Franchise Agreement (the "Amendment") to reflect the fact that: (i) Tasone LLC changed its name and entity form to TASONE inc., a Colorado corporation; and (ii) Elez transferred all of her interests in Tasone LLC/TASONE inc. to Boles. Boles also confirmed in the Amendment that the name change and entity form change had no effect on the scope, validity or enforceability of his guaranty of Tasone's obligations to KFF under the Franchise Agreement.

15.     KFF and Tasone agreed in the Franchise Agreement that Tasone would be subject to requirements and obligations in connection with the construction and operations of the Store. *See* Franchise Agreement, Exhibit "A," § 7(d). Tasone agreed it would be in default of the Franchise Agreement if, among other things, it failed correct any noncompliance within 30 days

after KFF notified Tasone in writing that it had failed to fulfill a requirement or perform an obligation.  *See* Franchise Agreement, Exhibit "A," § 16.

16.     KFF and Tasone further agreed that Tasone would be subject to certain use and disclosure requirements related to KFF's intellectual property, including KFF's Marks, Copyrighted Materials, Trade Secrets, and System (sometimes collectively referred to as "KFF's Protected Information").  *See* Franchise Agreement, Exhibit "A," § 12.  KFF and Tasone agreed to the definitions of those terms as defined in the Franchise Agreement as follows:

**Marks** refers to and includes (i) the Kolache Factory service mark and logo, (ii) the Kolache Factory trade name, (iii) the elements and components of a Store's Trade Dress, and (iv) any and all additional or different trade names, trademarks, service marks, logos and slogans that Company adopts to identify the Kolache Factory Network and the products and services Stores offer.  The Kolache Factory registered trademarks are described in Exhibit A.

**Copyrighted Materials** refers to and includes all versions, variations and adaptations of the following materials in tangible form, either produced by Company, produced on its behalf as works for hire, or derived from works produced by or on behalf of Company: (i) all manuals used in a Store's development, operation and marketing activities, including but not limited to the Operations Manual, (ii) training materials (including printed, audio, video or electronic materials), (iii) Store plans and specifications that are works for hire, (iv) menu board designs and graphics, (v) product identification posters and photographs, (vi) advertising and marketing materials, (vii) labels, forms and reports provided by Company, (viii) any computer software developed by Company or as works for hire for use in the operation of Stores, and (ix) any other materials protected by copyright law or marked or identified by Company as protected by copyright.

**Trade Secrets** means the components of the System, the contents of the Operations Manual and of all employee training materials and computer programs developed by Company or in accordance with its specifications, and any other confidential information that Company imparts to Franchisee with respect to a Store's operation or management, whether through the Operations Manual or otherwise.

**System** means the compilation of operating procedures, marketing concepts, management techniques, and communications methods and procedures that Company has developed or adopted to govern the operation of Stores, the marketing of their products and services, and the methods of communication between and among Company and Store operators.

17.     KFF and Tasone further agreed to certain noncompetition provisions. Specifically, Tasone agreed that for two years after termination of the Franchise Agreement it would not own or operate, directly or indirectly, or accept employment by or hold an interest in any bakery that produces kolaches as a principal product or in any quick service food business that services kolaches as a primary menu item.  *See* Franchise Agreement, Exhibit "A," § 19(a). In the Guaranty, Boles and Elez acknowledged and agreed to be personally bound to the noncompetition provisions in Section 19 of the Franchise Agreement to the same extent as if they were the Franchisee.  *See* Guaranty, Exhibit "B," p. 2.

18.     In addition to any other remedies available to KFF at law or in equity, if Tasone failed to honor its noncompetition agreement, then KFF would be entitled to receive throughout the term of the covenant, in addition to other remedies available to KFF at law or in equity, and Tasone agreed to pay, a weekly fee equal to 10% of the competing operation's revenues.  *See* Franchise Agreement, Exhibit "A," § 18(c).

19.     KFF and Tasone further agreed to certain liquidated damages provisions. Specifically, if Tasone continued to use any of the Marks or any element of the System in connection with the continued operation of the Store or otherwise after termination of the Franchise Agreement, then, in addition to any other remedies available to KFF at law or in equity, KFF would be entitled to collect from Tasone, and Tasone agreed to pay, a weekly royalty for such use of the Marks and/or the System equal to 150% of the royalties that Tasone would otherwise have been obligated to pay under Section 10 of the Franchise Agreement.  *See* Franchise Agreement, Exhibit "A," § 18(a).

20.     KFF and Tasone further agreed that KFF may recover damages and costs of enforcement (including reasonable attorneys' fees) from Tasone, Boles, and Elez for the

unauthorized use of any Mark and/or Trade Secret or the unauthorized use, copying or distribution of any time of Copyrighted Materials, and for any loss of customer or future Franchisee goodwill in the Store's trade area.[2]  *See* Franchise Agreement, Exhibit "A," § 17(i).

21.     In the event Tasone failed to cure any default before the remedial period expired, Tasone agreed that KFF was entitled at its sole discretion to terminate the Franchise Agreement and Tasone's rights thereunder.  *See* Franchise Agreement, Exhibit "A," § 17(a).  Upon termination of the Franchise Agreement, Tasone's right and privilege to use the Marks, the Copyrighted Materials, the Trade Secrets and all components of the Operations Manual would absolutely and unconditionally cease.  *See* Franchise Agreement, Exhibit "A," § 17(a).  Further, upon termination of the franchise, Tasone agreed that it would immediately: (i) "discontinue use of the Marks, the Copyrighted Materials, the System and the Trade Secrets;" (ii) "remove from the Store's premises all interior and exterior Kolache Factory signs and other uses of the Marks;" and (iii) "alter the Store's interior to remove all Trade Dress items and otherwise eliminate the distinctive features of the Store concept."  *See* Franchise Agreement, Exhibit "A," § 17(a)(1), (3) and (4).

22.     Finally, KFF and Tasone agreed in the Franchise Agreement that KFF shall be entitled to injunctive or similar relief, without bond, against Tasone, Boles and Elez: (i) to enforce compliance with the post-termination requirements; and (ii) to restrain the unauthorized or violative use of any Mark, item of Copyrighted Materials or Trade Secret.  *See* Franchise Agreement, Exhibit "A," §§ 17(c), 17(h).

---

[2] Exhibit B to the Franchise Agreement defines the Store's trade area as a one mile radius from the approved location, which is 9998 West Colfax Avenue, Lakewood, Colorado 80215.

*Tasone's Breaches of the Franchise Agreement*

23.     On July 6, 2016, KFF's representative inspected Tasone's Store and discovered numerous material deficiencies in operations and food product preparation, storage and usage, each of which constituted a separate and actionable default under Section 16(b)(3) of the Franchise Agreement.   Further, KFF discovered that Boles was effectively acting in a General/Kitchen Manager capacity without having satisfactorily completed and received certification from KFF's training program pursuant to Sections 7(d)(3) and 7(d)(9).  A true and correct copy of KFF's Field Visit Confirmation from the inspection of Tasone's Store is attached hereto as <u>Exhibit "C."</u>  Two days later, KFF sent a Notice of Default to Tasone via email, certified mail and overnight delivery outlining the aforementioned defaults and providing 30 days to cure the defaults pursuant to Section 16(b)(3) of the Franchise Agreement.  A true and correct copy of the Notice of Default is attached hereto as <u>Exhibit "D."</u>

24.     On July 20, 2016, representatives from KFF held a telephone call with Boles and Elez to discuss the Notice of Default.  KFF advised Boles and Elez that a change to any of KFF's procedures must be brought up through the proper channels and Defendants could not unilaterally decide to implement changes themselves.  Boles assured KFF that Defendants would go back to preparing kolaches according to KFF's standards and would submit any requests for changes to recipes or preparation methods for review and approval before implementation.

25.     On August 22, 2016, KFF representatives visited the Store to determine whether Tasone had cured its material defaults described in the Notice of Default.  During this Store visit, KFF discovered that not only were all or substantially all of the material defaults set forth in the Notice of Default uncured and ongoing, KFF also discovered additional material defaults including the ordering and use of unapproved croissant triangles, the use of unapproved

uniforms, and the improper processing and preparation of dough.  In an effort to avoid a protracted dispute, KFF sent Tasone a letter outlining the uncured and additional defaults and proposing terms to settle the dispute.  The parties, however, were unable to reach terms and resolve their dispute.

### Termination of the Franchise Agreement

26.     On September 7, 2016, KFF sent a Notice of Termination and Demand for Satisfaction of Post-Termination Obligations ("Notice of Termination") to Tasone via email and overnight delivery because Tasone had failed to take any actions to cure its material defaults. KFF demanded that Tasone immediately comply with all post-termination obligations set forth in the Franchise Agreement, including but not limited to those obligations set forth in Sections 17, 18 and 19 of the Franchise Agreement.  A true and correct copy of the Notice of Termination is attached hereto as Exhibit "E."

### Defendants' Failure to Comply with Post-Termination Obligations

**A.     Defendants' Continued Use of KFF's Trade Secrets.**

27.     Despite its obligations in the Franchise Agreement and the Notice of Termination, Tasone did not immediately discontinue all use of the Marks, Copyrighted Materials, System and Trade Secrets, and Tasone did not immediately return materials and media designated by KFF as containing Trade Secrets or constituting proprietary items including two hard drives with KFF's propriety information.

28.     Tasone also did not refrain from divulging or using any secret or confidential information, trade practices, and/or trade secrets related to KFF's business and of which Tasone became familiar only through its training and operation of a Kolache Factory Store under the terms of the Franchise Agreement.

29.     KFF has evidence and information that Defendants have used or continue to use KFF's Marks, Copyrighted Materials, the System and/or Trade Secrets in direct violation of Section 17(a) of the Franchise Agreement, including but not limited to KFF's proprietary kolache recipe book, its trademarked tagline "A History of Good Taste," and product vendors. Section 17(a) of the Franchise Agreement is also incorporated into the Guaranty.

**B.     Defendants' Violation of the Covenant Against Competition.**

30.     Tasone, Boles and Elez continue to own and operate a bakery that produces kolaches as a principal product and/or own and operate a food business that serves kolaches as a primary menu item in violation of the covenant against competition in the Franchise Agreement.

31.     On September 19, 2016, KFF sent a Cease and Desist Letter to Tasone via email and overnight delivery based on evidence and information that Tasone was currently operating a competing "Kolache House Bakery" restaurant (sometimes referred to as "KHB") on the premises of the former Store that "produces kolaches as a principal product" and "serves kolaches as a primary menu item" in direct violation of the Covenant Against Competition set forth in Section 19(a) and 19(b) of the Franchise Agreement, which are also incorporated into the Guaranty.  A true and correct copy of the Cease and Desist Letter is attached hereto as Exhibit "F."

32.     The Cease and Desist Letter provided Defendants a final opportunity to timely act and comply with their express obligations under the Franchise Agreement, the Guaranty, and the Notice of Termination.  Defendants failed to act or comply with their express obligations under the Franchise Agreement, the Guaranty, and the Notice of Termination.

C.       **Defendants' Failure to Pay All Amounts Due.**

33.      Tasone did not pay KFF all amounts due under the Franchise Agreement and otherwise related to Tasone's actions, which payments include: (i) past due amounts set forth on Exhibit A to the Cease and Desist Letter; (ii) liquidated damages pursuant to Sections 18(a), 18(b) and/or 18(c) based on Tasone holding over and continuing to operate as a Kolache Factory Store after the date of the Notice of Termination and Tasone's current and continuing breaches of the post-termination covenants against competition as set forth in Section 19; (iii) lost profit damages based on Tasone's failure to operate the Store for the full duration of the Franchise Agreement; and (iv) all attorneys' fees and related costs incurred by KFF related to the Notice of Default, Notice of Termination, Tasone's breach of the Franchise Agreement and all enforcement efforts thereunder (all unpaid amounts collectively, the "Amounts Due").

34.      As a result of Tasone's violations of the Franchise Agreement, Boles and Elez have breached their Guaranty to the Franchise Agreement and are likewise liable for the Amounts Due.

## FIRST CLAIM FOR RELIEF

### *Breach of the Franchise Agreement—Covenant Against Competition*
### *(Against all Defendants)*

35.      KFF incorporates the preceding allegations of the Complaint herein by reference as if set forth in full.

36.      The Franchise Agreement is valid and enforceable in all respects in that it is ancillary to an otherwise enforceable agreement (the Franchise Agreement), contains reasonable limitations as to time, geographical area and scope of activity to be restrained and does not impose a greater restraint than necessary to protect the goodwill or other business interests of KFF.

37.    KFF fully performed its obligations and duties under the Franchise Agreement, and all conditions precedent to KFF's bringing this action and enforcement of the Franchise Agreement have been performed or have occurred.

38.    Tasone breached the Franchise Agreement by, among other things, owning, operating, accepting employment by and/or holding an interest in a bakery that produces kolaches as a principal product or in any quick service food business that serves kolaches as a primary menu item.  *See* Franchise Agreement, Exhibit "A," § 19(a).

39.    The Covenant Against Competition applies for the two-year period after the franchise expires excluding any time during which Franchisee is in violation or breach of the covenant.  *See* Franchise Agreement, Exhibit "A," § 19(b).  Defendants continue to violate the covenant to date.

40.    Boles and Elez breached the Guaranty, which expressly incorporated the provisions of Section 19 from the Franchise Agreement and by which Boles and Elez agreed to be personally bound by the restrictions, limitations, and obligations set forth in that Section to the same extent as those they were the Franchisee.  *See* Guaranty, Exhibit "B," p. Guaranty-2.

WHEREFORE, KFF demands judgment and an order against Defendants, jointly and severally:

a.    Preliminarily and permanently enjoining Defendants, their directors, managers, officers, members, agents, servants, employees, and all attorneys and all other persons who are in active concert or participation with them from directly or indirectly engaging in any competitive business within the DMA (as that term is defined in the Franchise Agreement) where the Store is located and in each other DMA in which a KFF-owned or franchised Store operating or under

development at the time the Franchise Agreement was executed for a period of two (2) years from the date of this Court's order; and

b.       Granting KFF its attorneys' fees, pre-judgment interest, costs of suit, and such other and further relief as this Court shall deem just and proper.

## SECOND CLAIM FOR RELIEF

### *Violations of the Lanham Act*
*(Against all Defendants)*

41.       KFF incorporates the preceding allegations of this Complaint herein by reference as if set forth in full.

42.       KFF owns the Marks, and the Kolache Factory registered trademarks are registered on the Principal Register of the United States Patent and Trademark Office as indicated in the Franchise Agreement that Defendants received.[3]

43.       KFF derives independent economic value from KFF's Protected Information not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.  KFF's Protected Information is the subject of efforts that are reasonable under the circumstances to maintain their secrecy.  KFF requests that Defendants cease and desist from use of the Marks.

44.       Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), provides that "[a]ny person who shall, without the consent of the registrant – use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant."

---

[3] *See* Franchise Agreement, Exhibit "A," p. A-1 (Description of Principal Marks).

45.     Tasone, Boles, and Elez have used the Marks, including reproductions, counterfeits, copies, or colorable imitations, in connection with the sale, offering for sale, distribution, and advertising of goods and services that is likely to cause confusion, cause mistake, or to deceive.  In June 2017, a former KHB employee submitted an online comment to Kolache Factory and stated KHB was still using the Kolache Factory recipe book.  Upon information and belief, Boles and Elez retained KFF's proprietary recipe book in the manager's office at the Store and KHB employees refer to the recipe book whenever they run out of a particular product.  Upon information and belief, the recipe book has the words "Kolache Factory" on it.

46.     Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides that "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which – is likely to cause confusion or to cause mistake, or to deceive as to affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of . . . goods [or] services . . . shall be liable in a civil action."

47.     The webpage for KHB's Store on the Yelp website includes eleven pictures. Notably, four of those pictures are: (i) the front of the Store with a "Kolache Factory" sign; (ii) the front counter inside the Store with the Kolache Factory menu, logo, color schemes, and trade dress; (iii) Kolache Factory's to-go menu; and (iv) a Kolache Factory to-go box and to-go bag, both of which contain the Kolache Factory logo, name, tagline, and website.  A true and correct copy of a screenshot of KHB's webpage on the Yelp website taken on December 20, 2017 is attached hereto as Exhibit "G."

48.     The pictures on the Yelp website and Defendants' actions in continuing to sell kolaches under the name "Kolache House Bakery," using KFF's proprietary recipe book, and marketing, promoting, and/or shipping its kolache products using a to-go menu that is practically identical to KFF's, including ingredient components and calorie counts, constitute:

       a.   A false designation of origin;

       b.   A false or misleading description of fact; and

       c.   A false and misleading representation of fact

that has caused and is likely to continue to cause confusion, mistake, or deception to the effect that KFF sponsors or approves of the services that Defendants provide at the Store, all in violation of Section 43(a) of the Lanham Act.

49.     Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), provides that "[t]he owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms of the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subparagraph."

50.     Defendants' use of KFF's Marks in connection with the goods and services at the Store, after the Marks became famous, has caused and will continue to cause dilution and disparagement of the distinctive quality of the Marks, and has lessened and will continue to lessen the capacity of the Marks to identify and distinguish the goods and services of KFF, all in violation of Section 43(c) of the Lanham Act.

51.     Defendants' ongoing acts of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act are malicious, fraudulent, willful, and deliberate.

52.     Defendants' ongoing acts of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act have caused and will continue to cause irreparable harm to KFF.

53.     Pursuant to the terms of the Franchise Agreement, Tasone agreed that "[u]pon termination or expiration of the franchise, [Tasone's] right and privilege to use the Marks, the Copyrighted Materials, the Trade Secrets and all components of the Operations Manual shall absolutely and unconditionally cease." *See* Franchise Agreement, Exhibit "A," § 17(a).  Further, upon termination of the franchise, Tasone agreed that it would immediately: (i) "discontinue use of the Marks, the Copyrighted Materials, the System and the Trade Secrets;" (ii) "remove from the Store's premises all interior and exterior Kolache Factory signs and other uses of the Marks;" and (iii) "alter the Store's interior to remove all Trade Dress items and otherwise eliminate the distinctive features of the Store concept." *See* Franchise Agreement, Exhibit "A," § 17(a)(1), (3) and (4).

54.     In addition to other KFF's other rights and remedies, Tasone agreed that KFF "may obtain injunctive relief, without bond, against [Tasone] and/or any other Person Bound restraining the unauthorized or violative use of any Mark, item of Copyrighted Materials or Trade Secret, with or without terminating the franchise." *See* Franchise Agreement, Exhibit "A," § 17(h).  Tasone further agreed that KFF "may recover damages and costs of enforcement (including reasonable attorneys [sic] fees) from [Tasone] and any other Person Bound for the unauthorized use of any Mark and/or Trade Secret or the unauthorized use, copying or distribution of any item of Copyrighted Materials, and for any loss of customer or future Franchisee goodwill in the Store's Trade Area." *See* Franchise Agreement, Exhibit "A," § 17(i).

55.     If, after the termination of the franchise by KFF, Tasone "continues to use any of the Marks or element of the System in connection with the continued operation of the Store or

otherwise, then, in addition to any other remedies available to [KFF] at law or in equity, [KFF] shall be entitled to collect from [Tasone], and [Tasone] agrees to pay a weekly royalty for such use of the Marks and/or the System equal to 150% of the royalties that [Tasone] would otherwise have been obligated to pay under Section 10." *See* Franchise Agreement, Exhibit "A," § 18(a).

56.     KFF has no adequate remedy at law.  As a result of the breaches of the Franchise Agreement by Tasone, and the breaches of the Guaranty by Boles and Elez, KFF also has been irreparably damaged by, among other things, loss of its confidential information, damage to its goodwill and client relationships, and loss of the benefit of the Franchise Agreement.  This damage cannot be adequately remedied by the award of monetary damages and KFF is therefore entitled to a permanent injunction requiring Defendants to adhere to the terms of the Franchise Agreement and prohibiting Defendants from violating the terms therein

57.     No previous injunctive relief has been awarded with respect to this matter or in this case or any other case.

58.     All conditions precedent to KFF's right to recovery for this claim have been performed or have occurred.

WHEREFORE, pursuant to 15 U.S.C. §§ 1114 and 1125(a) and (c), KFF demands judgment against Defendants, jointly and severally:

a.     Preliminarily and permanently restraining and enjoining Defendants, their agents, servants, employees, and attorneys, and all those who act in concert or participating with them from engaging in the following acts:

(i)     Acquiring, disclosing or using KFF's Marks;

(ii)     Destroying, erasing or failing to maintain all records or documents, in any form or media, in Defendants' possession, custody or control which relate in any way to KFF's Marks;

     (iii)    Communicating, publishing, disclosing, divulging, using or authorizing anyone else to communicate, publish, disclose, divulge or use, for the benefit of Tasone or any other person, partnership, association, corporation or other entity, any of the Marks;

     (iv)    Copying any materials containing Marks;

     (v)    Using, displaying, or failing to remove or alter all interior and exterior Kolache Factory signs and other uses of the Marks at the Store's premises; and

     (vi)    Using, displaying, or failing to remove or alter all Trade Dress items and distinctive features of the Store concept, including all trade dress and related colors (specifically the color red and all baker and rolling pin depictions) including wall graphics and landscape images, uniforms, menu board graphics, counters and arches, all menus, bags and boxes) and cease identifying themselves as a current or former Kolache Factory franchisee.

b.    Directing Defendants to remove and deliver to KFF all manuals, recipe books, or any other documents containing KFF's Marks, and other means of making or duplicating the same;

c.    Requiring that Defendants file with the Court and serve on KFF within thirty (30) days after the issuance of any injunction, a report in writing and under oath setting forth in detail the manner and form with which they have complied with the injunction; and

d.    Granting KFF's attorneys' fees, costs of suit, and such other and further relief as this Court shall deem just and proper.

### THIRD CLAIM FOR RELIEF

***Misappropriation of Trade Secrets under the Federal Defend Trade Secrets Act***
*(Against all Defendants)*

59.    KFF incorporates the preceding allegations of the Complaint herein by reference as if set forth in full.

60.    The Defend Trade Secrets Act of 2016 ("DTSA"), passed by Congress in August 2016 and effective May 11, 2016, is an amendment to the Economic Espionage Act ("EEA") (18

U.S.C. § 1831 *et seq.*) that creates a federal private cause of action for trade secret misappropriation.  The DTSA provides that "[a]n owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to produce or service used in, or intended for use in, interstate or foreign commerce."  18 U.S.C. § 1836(b)(1), as amended by the DEFEND TRADE SECRETS ACT OF 2016, P.L. 114-153, May 11, 2016, 130 Stat. 376.

61.    In addition, the DTSA provides for injunctive relief in a civil action "to prevent any actual or threatened misappropriation . . . on such terms as the court deems reasonable," and treats a continuing misappropriation as a single act.  18 U.S.C. §§ 1836(b)(3)(A)(i), 1836(d). Finally, the DTSA provides that "[t]he district courts of the United States shall have original jurisdiction of civil actions brought under this section."  18 U.S.C. § 1836(c).

62.    KFF is the owner of various trade secrets[4] including: (i) the System; (ii) the contents of the Operations Manual and of all employee training materials and computer programs developed by KFF or in accordance with its specifications; (iii) product recipes; (iv) KFF procedures and methods for the preparation, baking, storage, presentation and dispensing of kolaches, other menu items, and merchandise; (v) KFF-branded products and other proprietary products; (vi) Store plans and specifications that are works for hire; (vii) menu board designs and graphics; (viii) product identification posters and photographs; (ix) advertising and marketing materials; (x) labels, forms and reports provided by KFF; (xi) any computer software developed by KFF or as works for hire for use in the operation of Stores; (xii) methods of communication between and among KFF and Store operators; (xiii) and any other confidential or proprietary information KFF imparts to its franchisees with respect to the Store's operation or management,

---

[4] For the purposes of this claim and as set forth in Paragraph 64, the noncapitalized term "trade secrets" is broader than the term "Trade Secrets" as defined in the Franchise Agreement.

whether through the Operations Manual or otherwise. All of this information also derives independent economic value from not being generally known to or not being reasonably ascertainable by proper means to the public or KFF's competitors. *See* 18 U.S.C. § 1839(3).

63.     Among other things, Defendants secretly kept—and actively still use—KFF's proprietary kolache recipe book to sell kolaches under the name "Kolache House Bakery." Defendants' blatant and willful disregard of the post-termination covenants and KFF's Protected Information is readily apparent in a side-by-side comparison of the to-go menu from Kolache Factory and one KHB was using. Both menus contain identical or nearly-identical kolaches (including names and stated ingredients), prices (per kolache <u>and</u> per dozen), calorie counts, nutritional endorsements, operating hours, catering minimums, and shipping information. Defendants also plagiarized an entire paragraph written by KFF regarding the history of kolaches and copied KFF's trademarked tagline "A History of Good Taste." A true and correct copy of a comparison of KHB and Kolache Factory's to-go menus is attached hereto as <u>Exhibit "H."</u>[5]

64.     As of December 20, 2017, KHB's website also includes the exact same calorie count and information as KFF's to-go menu and website.[6]

65.     KFF has taken reasonable measures to protect the secrecy of its trade secrets, including but not limited to causing franchisees to execute franchise agreements containing confidentiality, non-competition, and post-termination provisions. *See* 18 U.S.C. § 1839(3).

66.     All of KFF's trade secrets identified in Paragraph 66 relate to a product and/or service used in interstate or foreign commerce. *See* 18 U.S.C. § 1836(b)(1).

---

[5] The KHB to-go menu was obtained from the Store on May 22, 2017.
[6] The KHB website was accessed on December 20, 2017, and the calorie counts and information for the following kolaches were spot-checked against those created by KFF and determined to be exactly the same: Potato Egg & Cheese, Sausage Egg & Cheese, Bacon  Egg & Cheese, Texas Hot (which KHB calls "Vienna Hot"), and Ham Egg & Cheese croissant.

67.     Defendants have misappropriated KFF's trade secrets by disclosing and using such trade secrets without KFF's express or implied consent to compete with KFF, all despite Defendants' knowledge that the trade secrets were acquired under circumstances giving rise to a duty to maintain their secrecy or limit their use.  *See* 18 U.S.C. §§ 1839(5), (6).  Defendants' misappropriation of KFF's trade secrets began after May 11, 2016, when KFF terminated the Franchise Agreement on September 7, 2016.  Defendants' misappropriation is ongoing and continuous.

68.     Defendants' use of KFF's trade secrets is causing KFF significant and irreparable harm, including the loss of good will and the dilution of the economic value of KFF's intellectual property.

69.     KFF is entitled to injunctive relief under the DTSA as well as monetary damages, exemplary damages, attorneys' fees and costs.  *See* 18 U.S.C. §§ 1836(b)(3)(A)-(D).

70.     All conditions precedent to KFF's right to recovery for this claim have been performed or have occurred.

WHEREFORE, pursuant to 18 U.S.C. § 1831 *et seq.*, KFF demands judgment against Defendants, jointly and severally:

a.      Preliminarily and permanently restraining and enjoining Defendants, their agents, servants, employees, and attorneys, and all those who act in concert or participating with them from engaging in the following acts:

(i)     Acquiring, disclosing or using KFF's Marks, Copyrighted Materials, or Trade Secrets, including, without limitation, components of the System, the contents of the Operations Manual and of all employee training materials and computer programs developed by KFF or in accordance with its specifications, and any other confidential information that KFF imparted to Tasone with respect to a Store's operation or management, whether through the Operations Manual, the proprietary recipe book or otherwise;

(ii)    Destroying, erasing or failing to maintain all records or documents, in any form or media, in Defendants' possession, custody or control which relate in any way to KFF or its Marks, Copyrighted Materials or Trade Secrets;

(iii)   Communicating, publishing, disclosing, divulging, using or authorizing anyone else to communicate, publish, disclose, divulge or use, for the benefit of Tasone or any other person, partnership, association, corporation or other entity, any secret or confidential information related to the business, trade practices, trade secrets, methods of operation, sales, promotion, marking, technology, know-how or recipes of Kolache Factory or its Affiliates, the System, or operation of the Store which may have been communicated to Tasone or of which Tasone may have been apprised by virtue of Tasone's operation under the terms of the Franchise Agreement;

(iv)    Copying any materials containing Marks, Copyrighted Materials, or Trade Secrets;

(v)     Owning or operating, directly or indirectly, or accepting employment by or holding an interest in any bakery that produces kolaches as a principal product or in any quick service food business that services kolaches as a primary menu item that is located in the Designated Market Area (as defined in the Franchise Agreement) in which the Store was located and in each other Designated Market Area in which a KFF-owned or franchised Store is operating or under development for a period of two (2) years from this Court's order;

(vi)    Using, displaying, or failing to remove or alter all interior and exterior Kolache Factory signs and other uses of the Marks at the Store's premises;

(vii)   Using, displaying, or failing to remove or alter all Trade Dress items and distinctive features of the Store concept, including all trade dress and related colors (specifically the color red and all baker and rolling pin depictions) including wall graphics and landscape images, uniforms, menu board graphics, counters and arches, all menus, bags and boxes) and cease identifying themselves as a current or former Kolache Factory franchisee; and

(viii)  Employing or soliciting for employment any person who is employed by KFF, Kolache Factory Inc., any affiliate of KFF or Kolache Factory Inc., or any other franchisee in KFF's franchise system or directly or indirectly inducing any such person to leave such employment.

b.      Directing Defendants to remove and deliver to KFF all manuals, recipe books, or

any other documents containing KFF's trade secrets, curriculum, operating or business practices

(and any copies thereof) relating to the operation of the Store, and other means of making or duplicating the same;

c.      Requiring that Defendants file with the Court and serve on KFF within thirty (30) days after the issuance of any injunction, a report in writing and under oath setting forth in detail the manner and form with which they have complied with the injunction;

d.      Awarding actual damages for actual loss and for any unjust enrichment caused by Defendants' misappropriation;

e.      Awarding exemplary damages due to Defendants' willful and malicious misappropriation; and

f.      Granting KFF's attorneys' fees, costs of suit, and such other and further relief as this Court shall deem just and proper.

## FOURTH CLAIM FOR RELIEF

### *Breach of the Franchise Agreement*
*(Against Defendant Tasone)*

71.      KFF incorporates the preceding allegations of the Complaint herein by reference as if set forth in full.

72.      The Franchise Agreement is valid and enforceable in all respects.

73.      KFF fully performed its obligations and duties under the Franchise Agreement, and all conditions precedent to KFF's bringing of this action and enforcement of the Franchise Agreement have been performed or have occurred.

74.      Tasone breached the Franchise Agreement by, among other things: (i) failing to abide by the requirements and obligations related to operating the Store; (ii) taking, disclosing and/or using KFF's confidential information and proprietary information; (iii) competing against

KFF in violation of the noncompetition provision; and (iv) failing to pay all amounts due under the Franchise Agreement and Notice of Termination.

75.     Tasone's breaches directly and proximately caused damages and injury to KFF within the jurisdictional limits of this Court.

76.     Tasone's breaches entitle KFF to monetary payments pursuant to the liquidated damages provision of the Franchise Agreement.  *See* Franchise Agreement, Exhibit "A," §§ 18(a) and (c).

77.     To date, Tasone has not paid anything to satisfy its debt for the Amounts Due.

WHEREFORE, KFF demands judgment against Tasone for actual damages in an amount of at least the Amounts Due plus additional amounts, including Liquidated Damages, that continue to accrue due to Defendants' continued infringement of KFF's intellectual property and violation of the noncompetition provision, attorneys' fees, and costs of suit.

## FIFTH CLAIM FOR RELIEF

### *Breach of the Guaranty*
### *(Against Defendant Boles and Elez)*

78.     KFF incorporates the preceding allegations of this Complaint herein by reference as if set forth in full.

79.     The Guaranty is valid and enforceable in all respects.

80.     KFF fully performed its obligations and duties under the Guaranty, and all conditions precedent to KFF's bringing of this action and enforcement of the Guaranty have been performed or have occurred.

81.     Boles and Elez breached the Guaranty because Tasone has not faithfully and punctually performed each and every duty and obligation it owes under the Franchise

Agreement, nor has Tasone paid in full all monetary obligations it became obligated to pay KFF pursuant to the Franchise Agreement.

82.     Boles' and Elez's breaches directly and proximately caused damages and injury to KFF within the jurisdictional limits of this Court.

83.     Boles' and Elez's breaches entitle KFF to monetary payments pursuant to the liquidated damages provision of the Franchise Agreement, which is expressly incorporated into the Guaranty and constitutes a continuing obligation even after termination of the Franchise Agreement.  *See* Franchise Agreement, Exhibit "A," §§ 18(a), 18(c)); Guaranty, Exhibit "B," p. Guaranty-1.

WHEREFORE, KFF demands judgment against Boles and Elez for actual damages, together with interest and costs, including reasonable and necessary attorneys' fees.

## SIXTH CLAIM FOR RELIEF

### *Violation of Texas Uniform Trade Secrets Act*
*(Against all Defendants)*

84.     KFF incorporates the preceding allegations of this Complaint herein by reference as if set forth in full.

85.     This cause of action is brought under the Texas Uniform Trade Secrets Act ("TUTSA").  TEX. CIV. PRAC. & REM. CODE § 134A.001 et seq.

86.     KFF has trade secrets, including, without limitation, customer lists, employee data, and information.  KFF derives independent economic value from these trade secrets not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.  These trade secrets are the subject of efforts that are reasonable under the circumstances to maintain their secrecy.

87.     Tasone, Boles, and Elez misappropriated these trade secrets, by disclosing and using these trade secrets by using improper means to acquire knowledge of the trade secrets, and at the time of disclosure or use, they knew or had reason to know that the knowledge of the trade secret was derived from or through a person who had utilized improper means to acquire it, acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use and/or derived from or through a person who owed a duty to KFF to maintain its secrecy or limit its use.

88.     Defendants' wrongful use or disclosure of the confidential information and trade secrets of KFF has, and will continue to, seriously damage KFF in an amount that is not presently ascertainable, but is in excess of the Court's minimum jurisdictional limit.

89.     Because Defendants will continue their acts of misappropriation or threatened misappropriation of KFF's confidential information and trade secrets, which will irreparably injure KFF, KFF requests that the Court enjoin Defendants' improper activities.

90.     Defendants' misappropriation was willful and malicious.

91.     KFF is entitled to and seeks injunctive relief under TEX. CIV. PRAC. & REM. CODE § 134A.003 and attorneys' fees under TEX. CIV. PRAC. & REM. CODE § 134A.005.

92.     KFF also seeks damages against Defendants for their misappropriation pursuant to TEX. CIV. PRAC. & REM. CODE § 134A.004, including, without limitation, actual loss and unjust enrichment caused by the misappropriation and, alternatively, seeks a royalty, for Defendants' unauthorized disclosure and use of the trade secrets.

93.     KFF also seeks exemplary damages against Defendants because their misappropriation was willful and malicious.

94.     All conditions precedent to KFF's bringing this action and its right to recovery have been performed or have occurred.

WHEREFORE, KFF demands judgment against Defendants for actual damages, together with interest and costs, including reasonable and necessary attorneys' fees.

## SEVENTH CLAIM FOR RELIEF

### *Unfair Competition*
*(Against all Defendants)*

95.     KFF incorporates the preceding allegations of this Complaint herein by reference as if set forth in full.

96.     As described in this Complaint, Defendants have engaged in business conduct that is contrary to honest practice in industrial and commercial matters.  Defendants' actions are both illegal and tortious.

97.     Defendants' illegal and tortious acts, as described in this Complaint, have interfered with KFF's ability to conduct its business.

98.     By reason of, and as a direct result of, Defendants' acts of unfair competition, Defendants will benefit.

99.     As a direct result of Defendants' unfair competition, Defendants have damaged and will continue to damage KFF in an amount that is not presently ascertainable, but is in excess of the minimum jurisdictional limit of this court.

100.     Defendants will continue their acts of unfair competition, which will irreparably injure KFF, unless this Court enjoins their improper activities.  KFF is therefore entitled to a temporary restraining order and temporary and permanent injunctions to prevent this unfair competition in the future.

101.     KFF is also entitled to all damages caused by Defendants' unfair competition and exemplary damages due to Defendants' willful and bad faith acts.

102.    All conditions precedent to KFF's bringing of this action and its right to recovery have been performed or have occurred.

WHEREFORE, KFF demands judgment against Defendants for its actual and exemplary damages, together with interest and costs, including reasonable and necessary attorneys' fees.

## EIGHTH CLAIM FOR RELIEF

### *Attorneys' Fees*
*(Against all Defendants)*

103.    KFF incorporates the preceding allegations of this Complaint herein by reference as if set forth in full.

104.    KFF has retained counsel and is entitled to attorneys' fees under Texas state law, the Franchise Agreement, and the Guaranty.  KFF has incurred and continues to incur reasonable and necessary attorneys' fees together with court costs and litigation expenses.

105.    Pursuant to Section 17(f) of the Franchise Agreement and the penultimate paragraph of the Guaranty, KFF is entitled to recover its reasonable attorneys' fees, court costs and expenses incurred to enforce its rights against Defendants.

106.    KFF is also entitled to its reasonable and necessary attorneys' fees pursuant to TEX. CIV. PRAC. & REM. CODE §§ 38.001 *et seq.* since it asserts claims based on a breach of a written contract.

107.    All conditions precedent to KFF's bringing this action and its right to recovery have been performed or have occurred.

WHEREFORE, KFF demands judgment against Defendants for its reasonable and necessary attorneys' fees incurred in connection with this civil action in an amount to be determined at trial on the merits.

Respectfully submitted,

*Deborah S. Coldwell*
_____
Deborah S. Coldwell
Southern District Federal I.D. No. 17423
State Bar No. 04535300
HAYNES AND BOONE, L.L.P.
2323 Victory Avenue - Suite 700
Dallas, Texas 75219
Telephone:       (214) 651-5000
Facsimile:       (214) 651-5940
deborah.coldwell@haynesboone.com

**ATTORNEY-IN-CHARGE FOR PLAINTIFF**
**KF FRANCHISING, LTD.**

OF COUNSEL:

Taylor Rex Robertson
*Southern District Federal Bar Admission Pending*
Texas Bar No. 24093050
HAYNES AND BOONE, L.L.P.
2323 Victory Avenue - Suite 700
Dallas, Texas 75219
Telephone:  (214) 651-5000
Facsimile:  (214) 651-5940
taylor.robertson@haynesboone.com

**ATTORNEY FOR PLAINTIFF**
**KF FRANCHISING LTD.**